## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **TIMOTHY SPENCER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Civil Action No.** |
| **v.** ) | **24-11956-BEM** |
| ) | |
| **ROBERT BRACEY,** *individually and as a* ) | |
| *Health Inspector for the Town of North* ) | |
| *Reading***, and SHELLEY NEWHOUSE,** ) | |
| *individually and as Health Inspector for the* ) | |
| *Town of Wilmington***,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM AND ORDER ON
## <u>DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT</u>

**MURPHY, J.**

      Plaintiff Timothy Spencer has brought this action against Defendants Robert Bracey and

Shelley Newhouse, alleging claims of First Amendment retaliation, denial of equal protection, and

denial of due process arising out of complaints Spencer made to the Middlesex District Attorney's

Office and the subsequent revocation of his installer's licenses in North Reading and Wilmington.

Before the Court now are Bracey's and Newhouse's motions for summary judgment.  For the

reasons below, the Court will grant both motions in part.

## I.    Background

### A.    Factual Background

#### 1.    The Parties

For approximately forty years, Spencer has owned and operated a licensed septic system business.  Dkt. 29 ("Newhouse's Statement of Material Facts" or "Newhouse SMF") ¶ 1.[1]  In relevant part, and during the relevant time period, Spencer's business operated in the Towns of North Reading and Wilmington.  *Id.*; Dkt. 32 ("Bracey's Statement of Material Facts" or "Bracey SMF") ¶¶ 7–8, 10; Dkt. 43 ("Bracey's Response to Spencer's Additional Material Facts" or "Bracey RSMF") ¶¶ 4–5.[2]

Bracey has been the Director of Public Health for the North Reading Health Department since September 2015.  Bracey SMF ¶ 2.  His role falls under the direction, supervision, and control of the North Reading Board of Health.  *Id.* ¶ 3.

At all times relevant to this case, Newhouse was the health inspector/agent for the Town of Wilmington.   Newhouse SMF ¶ 2.  Her role included overseeing the local licensing process for those persons/entities installing septic systems in Wilmington.  *Id.* ¶ 3.

---

[1] The Court cites to Bracey's and Newhouse's statements of material facts where Spencer has admitted or otherwise adopted the relevant facts in his counterstatements of material facts.

[2] Bracey argues that due to Spencer's failure to timely respond to requests for admission, Dkt. 31 ("Bracey Mem.") at 8 n.3, "[it] is an admitted fact that the Town did not suspend the Plaintiff's installer's license," Bracey SMF ¶ 10.  Spencer disputes that he failed to provide a timely response.  Dkt. 39 ("Spencer's Counterstatement to Bracey SMF" or "Bracey CMF") ¶ 71.  But, either way, now at summary judgment, Spencer points to no evidence to contest Bracey's assertion that North Reading did not suspend Plaintiff's installer's license and so fails to raise a genuine dispute on that issue.  *See* Local Rule 56.1 ("Material facts of record set forth in the statement required to be served by the moving party will be deemed for purposes of the motion to be admitted by opposing parties unless controverted by the statement required to be served by opposing parties."); *Silva v. Town of Uxbridge*, 771 F. Supp. 3d 56, 65 (D. Mass. 2025) ("The nonmovant 'must present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986))).  As such, the Court treats such facts as undisputed.

###     2.    Spencer's Reports to the District Attorney

In 2018, Spencer made reports to the Middlesex District Attorney's Office related to a complaint made by another septic system installer that the Town of North Reading officials were illegally steering septic system work. Bracey RSMF ¶¶ 6, 9. Spencer contends that the investigation and his role in it were disclosed to then-Chief of Police and the Director of Public Safety, Michael Murphy ("Chief Murphy"), who had at least administrative control over Bracey. *Id.* ¶¶ 7, 10.[3] According to Spencer, because of his reports to the Middlesex District Attorney's Office, Chief Murphy instructed Bracey to harass Spencer or be fired, though Bracey disputes this fact. *Id.* ¶¶ 11–13. Spencer contends that Bracey admitted this to him directly in 2018. Dkt. 30-18 at 3 (Spencer's response to Interrogatory No. 5).

###     3.    North Reading Actions

In 2017, North Reading added the requirement that all installer renewal applications include a Commonwealth of Massachusetts Department of Public Safety Class 2 Heavy Equipment Operators License ("Hoisting License" or "HEL"). Bracey SMF ¶¶ 15–16. Spencer was informed of this requirement in October 2017 and December 2017, *id.* ¶¶ 17–18, but failed to include an HEL in either his or his son's name in his December 2017 renewal application, *id.* ¶ 19. Thus, he was informed his renewal application could not be processed. *Id.* ¶ 22.[4] Bracey then met with Spencer and provided guidance on how Spencer could renew his installer's license. *Id.* ¶ 24. In March 2018, Spencer asked if his son could get an HEL to satisfy the requirements on his behalf.

---

[3] Bracey disputes that Chief Murphy had authority over Bracey's actions, pointing to state law to demonstrate his independence from Chief Murphy. RSMF ¶ 7 (citing Mass. Gen. Laws c. 111, § 30).

[4] Spencer contends that Bracey "singled [Spencer] out," Bracey CMF ¶ 23, but does not otherwise dispute that Spencer's application failed to comply with the requirements applicable to all installers.

*Id.* ¶ 27.   On June 5, 2018, Spencer's application was processed and approved after adding Spencer's son's HEL license.  *Id.* ¶ 29.

In October 2018, Spencer worked on installation for a disposal system in North Reading. *Id.* ¶¶ 36–37.  The parties dispute whether Spencer approved of revised work plans for the site in March 2019 under duress from Bracey.  *Id.* ¶ 38; Dkt. 39 ("Spencer's Counterstatement to Bracey SMF" or "Bracey CMF") ¶ 38.   On April 30, 2019, Bracey was informed that Spencer would complete work according to the revised plans that weekend.  Bracey SMF ¶ 39.[5]  Despite this email, the work was not completed and the parties conferred over the remaining work through at least July 2019.  *Id.* ¶¶ 40–45.[6]  During this dispute, after Bracey received a complaint from the property owner, Bracey informed Spencer on June 11, 2019, that he could request a hearing with the Board of Health to raise complaints by filing a written petition with the Board of Health.  *Id.* ¶ 42; Dkt. 30-6 at 1 (email from Bracey to Spencer).

In January 2021, Spencer signed an obligation form regarding a septic disposal replacement that required him to request a bottom of bed inspection.  *Id.* ¶ 58.[7]  Installers must call the North Reading Health Department to schedule such an inspection.  *Id.* ¶ 59.  On March 9, 2021, Bracey informed Spencer that the inspection had not been requested, and thus Spencer had no authorization to install the septic tank, which would require the septic tank to be removed.  *Id.*

---

[5] Spencer claims to have "insufficient information upon which to base an opinion as to determine whether to admit or deny" a number of facts in Defendant's statement of facts.  *See, e.g.*, Bracey CMF ¶ 39.  At summary judgment, this is insufficient.  *See* Local Rule 56.1; *Silva*, 771 F. Supp. 3d at 65 ("The nonmovant 'must present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" (quoting *Anderson*, 477 U.S. at 257)).  As such, the Court treats such facts as undisputed.

[6] Again, the parties dispute whether Spencer was required to complete this work, or if he completed it under duress.  Bracey CMF ¶¶ 40–45; Bracey RSMF ¶ 24.

[7] Spencer purports to dispute this fact, Bracey CMF ¶ 58, but the cited evidence does not address the facts as Bracey states them.  As such, these facts are deemed undisputed.

¶ 60.[8]  On March 12, 2021, Bracey informed Spencer that the North Reading Health Department could complete the inspection on March 15, 2021, and reminded Spencer of the regulatory requirements to pass inspection.  *Id.* ¶ 61.[9]  During the inspection, Spencer was deemed to have not complied because the inspector was unable to verify the requirements, either in person or through photos.  *Id.* ¶¶ 61–62.[10]

In August 2021, Bracey contends that he saw Spencer operate heavy machinery without the requisite HEL in Wilmington.  Bracey SMF ¶ 52.[11]  In response, Bracey reported this to the Wilmington Health Department.  *Id.* ¶ 53.[12]  Bracey then received a phone call from Newhouse, in which she informed Bracey that Spencer's installer's license in Wilmington had been revoked. *Id.* ¶ 54.  Because North Reading requires installers to hold a second installer's license from another municipality within Massachusetts to be in good standing, Spencer was informed that he could not be issued any additional construction permits until he provided proof of a second license. *Id.* ¶¶ 55–56.  This did not constitute a suspension or revocation of Spencer's installer's license. *Id.* ¶ 56.  On September 2, 2021, Spencer provided proof of a second installer's license.  *Id.* ¶ 57.

In April 2022, prior to an inspection at a job site, Bracey emailed Spencer to request pictures of the bed bottom from a job site.  *Id.* ¶ 63.  Spencer responded with the requested pictures

---

[8] Spencer purports to dispute this fact, Bracey CMF ¶ 60, but the cited evidence does not address the facts as Bracey states them.  As such, these facts are deemed undisputed.

[9] Spencer purports to dispute this fact, Bracey CMF ¶ 61, but the cited evidence does not address the facts as Bracey states them.  As such, these facts are deemed undisputed.

[10] Spencer purports to dispute this fact, Bracey CMF ¶¶ 61–62, but the cited evidence does not address the facts as Bracey states them.  As such, these facts are deemed undisputed.

[11] Spencer purports to dispute this fact, Bracey CMF ¶ 52, but the cited evidence does not address the facts as Bracey states them, and instead refers to a dispute regarding a different job site.  As such, these facts are deemed undisputed.

[12] Spencer purports to dispute this fact, Bracey CMF ¶ 53, but the cited evidence does not address the facts as Bracey states them, and instead refers to a dispute regarding a different job site.  As such, these facts are deemed undisputed.

and the final covering was completed.  *Id.*  Spencer completed installations throughout the relevant time period, including installing seven systems in 2022.  *Id.* ¶ 64 (indicating Spencer completed two jobs in December 2022);[13] Dkt. 30-36 at 1 (indicating Spencer installed seven systems throughout 2022).

Bracey contends that he did not learn of Spencer's complaints made to the Middlesex District Attorney's Office regarding Bracey's involvement in illegally steering work until August 31, 2023.  Bracey SMF ¶ 33.[14]  At no point did Spencer make a written appeal to the North Reading Board of Health over any of the conduct at issue in this case.  *Id.* ¶ 21.

### 4.    <u>Wilmington Actions</u>

At some unidentified time prior to August 28, 2021, Bracey called Newhouse and informed her that Spencer did not have an HEL, which is required for any person operating an excavator. Newhouse SMF ¶¶ 4–5.[15]  Newhouse only learned of this due to Bracey's call, as it was not her standard practice to confirm every person operating hydraulic machinery has an HEL.  *Id.* ¶ 11.

It is undisputed that Spencer did not have an HEL in August 2021.  *Id.* ¶ 9.  On or about August 3, 2021, Newhouse accused Spencer of operating an excavator without an HEL.  *Id.* ¶ 8. Newhouse alleges that on or about August 28, 2021, she witnessed Spencer actively operating an

---

[13] *See supra* note 5.

[14] While normally Spencer's claim to have "insufficient information upon which to base an opinion as to determine whether to admit or deny" this fact would lead the Court to treat such a fact as undisputed, *see supra* note 5, in other places throughout Spencer's responses he identifies evidence to dispute this fact, *see, e.g.*, Bracey RSMF ¶¶ 11–13.  Thus, the Court treats this fact as disputed.

[15] Spencer contends that Newhouse testified under oath that Bracey also told Newhouse where Spencer was working so that she could go there and suspend Spencer's license.  Dkt. 36 ("Spencer's Counterstatement to Newhouse's Statement of Material Facts" or "Newhouse CMF") at 8 ¶ 27.  Newhouse denies this and has provided the transcripts to substantiate that she testified that Bracey only informed her that Spencer did not have an HEL. Dkt 37 ("Newhouse's Response to Spencer's Additional Material Facts" or "Newhouse RSMF") ¶ 27; *see also generally* Dkt. 47.  While Spencer opposes Newhouse's motion to supplement the record with the certified transcripts, Spencer's cited authority provides no basis to exclude them from the record, *see generally* Dkt. 48, especially where Spencer himself put the contents at issue.  Thus, the Court grants Newhouse's motion.

excavator, despite still not having an HEL.  *Id.* ¶ 6.  Spencer denies that he was operating the excavator.  *Id.* ¶ 10; *see also* Dkt. 36 ("Spencer's Counterstatement to Newhouse SMF" or "Newhouse CMF") ¶ 6; *id.* at 6 ¶ 17.[16]

On August 20, 2021, Newhouse sent Spencer a letter stating that she was revoking his Wilmington installer's license because he operated hydraulic machinery without an HEL. Newhouse SMF ¶ 13.  At this time, Newhouse was not aware of Spencer's complaints about Bracey and the Town of North Reading.  *Id.* ¶ 14.  Spencer contends that Newhouse singled him out, and that she knew of five other installers who did not possess an HEL.  Newhouse CMF at 7 ¶¶ 23–24.  Newhouse expressly denies this knowledge.  Dkt 37 ("Newhouse's Response to Spencer's Additional Material Facts" or "Newhouse RSMF") ¶¶ 23–24.[17]

After his installer's license was revoked, Spencer earned an HEL around December 1, 2021.  *Id.* ¶ 17.  On or about December 3, 2021, Spencer asked Newhouse to reinstate his installer's license.  *Id.* ¶ 18.  Newhouse refused and informed Spencer that he should return in April.  *Id.* ¶ 19. According to Newhouse, the annual application period to start septic installations or repair jobs begins in April.  *Id.* ¶ 20.  According to Spencer, Newhouse rejected his reinstatement request with hostility and blamed the refusal on the fact that she had been interviewed at length related to Spencer's complaints made to the Middlesex District Attorney.  Newhouse CMF at 7 ¶ 25.[18]

---

[16] Spencer's response to Newhouse's Statement of Material Facts and his statement of additional material facts are in the same document, but the statement of additional facts restarts at paragraph 1, thus duplicating the paragraph numbers in the same document.  *See generally* Newhouse CMF.  To avoid confusion, the Court cites to both the page number and the paragraph number to refer to the facts in Spencer's statement of additional material facts.

[17] This dispute is discussed in more detail in Section III(B)(2)(b), *infra*.

[18] Newhouse denies that this occurred.  Newhouse RSMF ¶ 25.

After the refusal, Spencer filed suit in Middlesex Superior Court to compel Newhouse to reinstate his installer's license. *Id.* ¶¶ 21–22.  On March 14, 2022, the court ordered Newhouse to reinstate Spencer's license. *Id.* ¶¶ 23–24.  Spencer received his installer's license on or about April 1, 2022. *Id.* ¶ 25.  Newhouse updated the paper list of installers in Wilmington, but she did not update the webpage and now states that the webpage had not been updated at all since 2019. *Id.* ¶¶ 26–27.

### B.    **Procedural Background**

Spencer filed this action on July 24, 2024, in Middlesex Superior Court, alleging several improper and malicious actions related to his licensure and operation as a septic systems installer. *See generally* Dkt. 1-3 ("Compl.").  Spencer contends that these actions constituted deprivations of (and retaliations for the exercise of) his rights under the First, Fifth, and Fourteenth Amendments and their Massachusetts Constitution counterparts. *Id.* ¶¶ 34–44.  Defendants timely removed the case to this Court on July 29, 2024. *See generally* Dkt. 1.  On August 8, 2025, Newhouse moved for summary judgment.  Dkt. 27; *see also* Dkt. 28 ("Newhouse Mem."); Dkt. 35 ("Newhouse Opp.").  On August 11, 2025, Bracey moved for summary judgment.  Dkt. 30; *see also* Dkt. 31 ("Bracey Mem."); Dkt. 38 ("Bracey Opp."); Dkt. 42 ("Bracey Reply").[19]

## II.    **Standard of Review**

Summary judgment will only be granted where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Grogan v. All My Sons Bus. Dev. LLC*, 552 F. Supp. 3d 142, 145 (D. Mass. 2021) (quoting Fed. R. Civ. P. 56(a)).  A fact is "material" if it "might affect the outcome of the suit under the governing

---

[19] The Court deemed the motions capable of resolution without a hearing. *See* Local Rule 7.1(f).

law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The Court must view "the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." *Noonan v. Staples, Inc.*, 556 F.3d 20, 25 (1st Cir. 2009). However, "[a]s to issues on which the party opposing summary judgment would bear the burden of proof at trial, that party may not simply rely on the absence of evidence but, rather, must point to definite and competent evidence showing the existence of a genuine issue of material fact." *Perez v. Lorraine Enters.*, 769 F.3d 23, 29–30 (1st Cir. 2014).

"At summary judgment, the court's task is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* (citations and internal quotes omitted). "[W]hen the facts support plausible but conflicting inferences on a pivotal issue in the case, the judge may not choose between those inferences at the summary judgment stage." *Coyne v. Taber Partners I*, 53 F.3d 454, 460 (1st Cir. 1995). However, "[t]he opposing party may not rely on conclusory allegations and unsupported speculation, and even when 'elusive concepts' like motive or intent are at issue summary judgment may be appropriate. The opposing party must offer 'definite, competent evidence' to defeat a properly supported motion for summary judgment." *Burns v. State Police Ass'n of Mass.*, 230 F.3d 8, 9 (1st Cir. 2000) (citations omitted).

## III.    Discussion

### A.    Bracey's Motion

Spencer does not dispute that, without application of the continuing violations doctrine, his claims prior to July 2021 are time-barred. *See* Bracey Opp. at 8, 10; *see also, e.g.*, *Verrier v. Beth Israel Deaconess Hosp.-Plymouth, Inc.*, 706 F. Supp. 3d 142, 146 (D. Mass. 2023) (noting section 1983 claims brought in Massachusetts are subject to a three-year statute of limitations); Mass. Gen.

9

Laws ch. 260, § 5B (providing a three-year statute of limitations for violations of the Massachusetts Civil Rights Act). Instead, Spencer seeks to salvage his claims through application of the "continuing violations" doctrine. Bracey Opp. at 9–11. The "continuing violations" doctrine provides a "narrow exception to the limitations period" that "is meant to protect plaintiffs from losing the ability to file suit for . . . claims that might, by their nature, take time to materialize."[20] *Ayala v. Shinseki*, 780 F.3d 52, 57–58 (1st Cir. 2015) (citations omitted). While Spencer argues that this doctrine applies to all of his claims, "'related discrete acts' cannot be combined 'into a single unlawful practice for the purposes of timely filing.'" *Rae v. Woburn Pub. Sch.*, 113 F.4th 86, 103 (1st Cir. 2024) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 111 (2002)).[21]

### 1.    First Amendment Retaliation

"[A] retaliation claim accrues as a discrete act of discrimination 'when it has a crystallized and tangible effect on the employee and the employee has notice of both the act and its invidious etiology.'" *Id.* at 102 (quoting *Shervin v. Partners Healthcare Sys., Inc.*, 804 F.3d 23, 34 (1st Cir. 2015)). By Spencer's own testimony, after Spencer's installer's license was not renewed, Bracey "admitted that Chief Murphy instructed [Bracey] to harass [Spencer] and that if [Bracey] failed to

---

[20] Although the continuing violation doctrine is derived from decisions interpreting Title VII of the Civil Rights Act of 1964, it "has been widely applied to § 1983 cases within the First Circuit." *Ayala-Sepúlveda v. Mun. of San Germán*, 727 F. Supp. 2d 67, 72 (D.P.R. 2010); *see also Gorelik v. Costin*, 605 F.3d 118, 121–23 (1st Cir. 2010) (analyzing continuing violation doctrine in a section 1983 case).

[21] "[T]he continuing violation doctrine is arguably more accommodating under Massachusetts law than under federal law," at least as applied to hostile work environment or harassment claims. *Rae*, 113 F.4th at 105 (quoting *Shervin v. Partners Healthcare Sys., Inc.*, 804 F.3d 23, 37 n.7 (1st Cir. 2015)). Neither party addresses any difference in application between federal and Massachusetts law. It is not clear that continuing violation doctrine applies to Spencer's state-law claims. Instead, for claims under the Massachusetts Civil Rights Act, "the limitations period has been held to commence on the date of the allegedly wrongful acts, unless the wrong is 'inherently unknowable.'" *Kaiser v. Kirchick*, 662 F. Supp. 3d 76, 94 (D. Mass. 2023) (quoting *Pagliuca v. City of Bos.*, 35 Mass. App. Ct. 820, 822–23 (1994)). "To start the limitations period a plaintiff need only have knowledge of all the facts necessary to make out his civil rights claim." *Id.* (quoting *Arsenault v. Otto*, 628 F.Supp.3d 377, 380 (D. Mass. Sept. 19, 2022)). Regardless, any differences in federal and Massachusetts law make no difference to the Court's ultimate conclusions.

carry out that order he would be fired." Dkt. 40 ¶¶ 12–14.  This conversation, during which Bracey purportedly admitted to retaliating against Spencer on Chief Murphy's orders, occurred in 2018, *see, e.g.*, Dkt. 30-18 at 3 (Spencer's response to Interrogatory No. 5), and thus falls outside the limitations period.

Accordingly, for each act of harassment outside the limitations period (prior to July 2021),[22] which Spencer contends relates to that same 2018 admission by Bracy of retaliation, Spencer had sufficient notice that his claims had accrued.  *See Phillips v. City of Methuen*, 818 F. Supp. 2d 325, 330 (D. Mass. 2011) ("In examining a continuing violation claim that alleges serial violations, if one of the discriminatory acts standing alone is of 'sufficient permanence' that it should trigger an 'awareness of the need to assert one's rights,' then the serial violation exception does not apply." (quoting *O'Rourke v. City of Providence*, 235 F.3d 713, 731 (1st Cir. 2001))); *Tobin v. Liberty Mut. Ins. Co.*, 553 F.3d 121, 130–31 (1st Cir. 2009) (holding that the continuing violation doctrine did not apply to plaintiff's time-barred claim where the challenged conduct is a "discrete discriminatory act that . . . does not require repeated conduct to establish an actionable claim.").  Thus, those acts prior to July 2021 are time-barred, and Bracey is entitled to summary judgment on the retaliation claims premised on those acts.[23]

With regard to the alleged actions of retaliation that do fall within the limitations period, such allegations fail to rise to the level of retaliation as a matter of law.  Spencer contends that Bracy illegally withheld Spencer's installer's license to operate his business in 2022.  Bracey Opp.

---

[22] Spencer makes no argument that the statute of limitations should be tolled due to the COVID-19 pandemic.  *See generally* Bracey Opp.  But even if the Court were to equitably toll Spencer's claims, they would still fail.  *See infra* below.

[23] The Court also notes that any allegations relating to events that predate Spencer's 2018 complaints cannot form the basis of a retaliation claim.  *See Pearson v. Mass. Bay Transp. Auth.*, 723 F.3d 36, 42 (1st Cir. 2013) ("Causation moves forward, not backwards, and no protected conduct after an adverse employment action can serve as the predicate for a retaliation claim.").

at 9.  However, the record is clear that Spencer's installer's license in North Reading was not suspended at all.  *See, e.g.*, Bracey SMF ¶ 10.  The undisputed record evidence shows that Spencer did install septic systems in North Reading in 2022, the very time in which Spencer claims his installer's license had been suspended.  *Id.* ¶ 64 (indicating Spencer completed two jobs in December 2022); *see also* Dkt. 30-36 at 1 (indicating Spencer installed seven systems throughout 2022).  Spencer's mere allegation that his installer's license was suspended does not create a genuine dispute of fact.[24]  *See Mancini v. City of Providence ex rel. Lombardi*, 909 F.3d 32, 38 (1st Cir. 2018) (explaining that "'[c]onclusory allegations, improbable inferences, acrimonious invective, or rank speculation' will not suffice" at summary judgment (quoting *Ahern v. Shinseki*, 629 F.3d 49, 54 (1st Cir. 2010))).

Next, Spencer alleges that he was threatened by Bracey to dig up a previously installed septic tank to demonstrate compliance with an inspection requirement in April 2022.  Yet not only did nothing arise from this alleged threat, *see* Bracey SMF ¶ 63, but the undisputed facts demonstrate that this rule is applicable to all installers, *see id.* ¶ 61,[25] and that Bracey permitted Spencer to demonstrate compliance via emailed photographs, *see id.* ¶ 63.  On these facts, there is simply no evidence of Bracey's retaliatory intent or any adverse action towards Spencer.  Spencer's arguments otherwise are merely "speculation unsupported by facts[,] . . . manifestly inadequate to stave off summary judgment."  *Trahan v. Wayfair Me., LLC*, 957 F.3d 54, 63 (1st Cir. 2020) (citing *Lang v. Wal-Mart Stores E., L.P.*, 813 F.3d 447, 460 (1st Cir. 2016)); *see*

---

[24] Spencer's contention that Bracey told him that his installer's license had been suspended fails to create a genuine dispute, Bracey CMF ¶¶ 10, 30, when there is simply no evidence that his installer's license ever was actually suspended.  To the extent Spencer argues that merely being told his installer's license had been suspended can constitute retaliation, he fails to show any harm from this conduct, given that he still was able to work under this license.  *See Rae*, 113 F.4th at 103 (explaining that retaliation claims require "a crystallized and tangible effect").

[25] *See supra* note 9.

*also Ameen*, 777 F.3d at 72 ("'[S]ubjective belief in retaliation is not enough' to show animus." (quoting *Roman*, 604 F.3d at 41)).

However, Spencer has identified genuine issues of disputed facts related to his claim that Bracey made a false allegation in August 2021 to Newhouse to prompt Newhouse into revoking Spencer's installer's license in another jurisdiction. There is clearly a dispute as to whether Bracey's allegation that Spencer impermissibly operated heavy machinery without the appropriate HEL was false. Bracey's RSMF ¶ 29. But while the decision to revoke Spencer's installer's license in Wilmington was made solely under Newhouse's authority, Bracey does not dispute at this time that she only did so based on his report of Spencer's allegedly unlawful activities. *Id.* ¶ 32. Bracey provides no support for his argument that Newhouse's making the ultimate decision to revoke Spencer's installer's license immunizes Bracey's conduct in making an allegedly false allegation, purportedly on a retaliatory basis, that resulted in loss of said license. *See Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 58 (1st Cir. 2013) (citing *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.")).

While Bracey has identified non-retaliatory justifications for his report, *see* Bracey Reply at 7, arguments raised for the first time in a reply are generally deemed waived, *see, e.g.*, *Noonan v. Wonderland Greyhound Park Realty, LLC*, 723 F. Supp. 2d 298, 349 (D. Mass. 2010).[26] Even if the Court were to consider the argument, however, Bracey's arguments regarding motive are not amenable to summary judgment, given the competing evidence regarding his intent to retaliate.

---

[26] For the same reason, the Court will not consider Bracey's arguments that he is entitled to qualified immunity. Qualified immunity is especially problematic to raise for the first time in a reply, as the posture prevents Spencer from responding, despite the burden for opposing qualified immunity falling on a plaintiff. *See Escalera-Salgado v. United States*, 911 F.3d 38, 41 (1st Cir. 2018) ("When a defendant invokes qualified immunity, the burden is on the plaintiff to show that the defense is inapplicable.").

*See, e.g.*, *Dolan v. Tavares*, 2011 WL 10676937, at *7 (D. Mass. May 16, 2011) ("[I]n deciding motions for summary judgment, it is widely recognized that questions of motive and intent will generally preclude a court from granting summary judgment."). Thus, the Court cannot conclude at this juncture that Bracey's conduct fails to rise to the level of retaliation.

Accordingly, only Spencer's claim that Bracey retaliated against him by making false allegations to Newhouse survives. Bracy is entitled to summary judgment on the remaining retaliation claims.

### 2.    Equal Protection

Spencer's equal protection claims fail for the same reason as the majority of his First Amendment retaliation claims. Spencer alleges that Bracey steered work to certain contractors with whom he was friends, to the detriment of Spencer (and the other contractors). But this same allegation was the subject of the 2019 Middlesex District Attorney's Office complaints. *See* Dkt. 30-18 at 5 (Spencer's response to Interrogatory No. 9, detailing the substance of his 2019 complaints). "[A] § 1983 plaintiff has 'a complete and present cause of action' when all of the acts comprising the specific constitutional violation have been completed." *Ouellette v. Beaupre*, 977 F.3d 127, 136 (1st Cir. 2020) (quoting *McDonough v. Smith*, 588 U.S. 109, 115 (2019)). That the allegedly unlawful conduct continued into the limitations period does not remove Spencer's obligation to timely file his complaint. *See Phillips*, 818 F. Supp. 2d at 331 ("A plaintiff cannot fail to file suit after a cause of action accrues simply because his rights continue to be violated.").

To the extent Spencer also argues he has alleged "other preferential treatment" that supports his equal protection claim, such as rules' being enforced against him but not others, Bracey Opp. at 10, Spencer has identified no factual or legal support for this argument. Failure to

support the argument constitutes a waiver. *Rodriguez-Reyes*, 711 F.3d at 58 (citing *Zannino*, 895 F.2d at 17); *see also Rodriguez*, 659 F.3d at 175.[27]

### 3.    **Due Process**

Spencer's due process claim is also time-barred. Spencer alleges that Bracey "denied [him] the right to appeal to the Board of Health." Bracey Opp. at 11. To the extent this occurred prior to July 2021,[28] such claims are outside the statute of limitations. The fact that Spencer alleges it continued into the limitations period cannot save his claim. *See Phillips*, 818 F. Supp. 2d at 331 ("A plaintiff cannot fail to file suit after a cause of action accrues simply because his rights continue to be violated."). In making his argument, Spencer cites no evidence whatsoever to suggest that Bracey took *any* actions to block access to the Board of Health, and the Court has not identified any in its own review of the record. *See* Fed. R. Civ. P. 56(c)(1)(A) (requiring that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record"); *see also Quint v. A.E. Staley Mfg. Co.*, 172 F.3d 1, 20 (1st Cir. 1999) ("[S]tatements by counsel are not competent evidence."). Moreover, the record shows that Spencer had been informed as early as June 11, 2019, that he could request a hearing with the Board of Health to raise complaints by filing a written petition with the Board of Health. Dkt. 30-6 at 1 (email from Bracey to Spencer).

To the extent Spencer argues "there are numerous disputed facts which pertain to Defendant Bracey's actions with respect to Plaintiff's work in the Town of Wilmington which do

---

[27] Nor has the Court, upon independent review of the summary judgment record, identified a timely equal protection claim. For example, to the extent Spencer would seek to argue that his allegations regarding the demand that he dig up a previously-installed septic tank in April 2022 to demonstrate compliance with a requirement regarding the amount of stone beneath the tank could constitutes an equal protection violation, there is no genuine dispute of fact that such a requirement was applied equally to all septic tank contractors. *See supra* Section III(A)(1).

[28] *See supra* note 22.

not come with any of the above claims and are required to survive on their own volition," Bracey

Opp. at 11, such argument fails to defeat summary judgment.  *See Rodriguez-Reyes*, 711 F.3d at

58 (citing *Zannino*, 895 F.2d at 17); *Rodriguez*, 659 F.3d at 175.[29]

### B.    Newhouse's Motion

#### 1.    State Law Claims

Newhouse argues that Spencer has not properly pled a claim under Massachusetts law.

Newhouse Mem. at 5–6.  While Spencer does not respond to this argument, *see generally*

Newhouse Opp., preferring to rule on the merits, the Court will address the issue.

"[T]he Massachusetts Declaration of Rights does not provide a private right of action."

*Drago v. Frias*, 2023 WL 5725169, at *2 (D. Mass. Sept. 5, 2023) (quoting *Nesbitt v. Wellpath*,

2022 WL 617514, at *6 (D. Mass. Mar. 2, 2022).  That said, while the complaint cites the

Massachusetts Declaration of Rights in listing the specific counts asserted, *see* Compl. ¶¶ 35, 40,

43, as Newhouse recognizes, Newhouse Mem. at 5 n.2, the complaint also cites to the

Massachusetts Civil Rights Act ("MCRA") as the basis for jurisdiction, Compl. ¶ 4.  But "[e]ven

if the Court liberally construed [his] state constitutional claims as brought under the [MCRA],

---

[29] Even if such claims were not time-barred, such claims would fail on the merits.  Spencer merely recharacterizes his retaliation claims as due process claims.  That is not sufficient.  Bracey's alleged retaliatory conduct does not "rise[] to the level of being 'truly horrendous' and courts have repeatedly concluded that government decisions driven by bias and animus is not 'conscience shocking,' nor is selective enforcement, singling out one person or entity, or making decisions that are in violation of state law" sufficient for a substantive due process claim.  *Light v. Town of Livermore*, 2022 WL 4016809, at *30 (D. Me. Sept. 2, 2022) (collecting cases).  Nor is there any evidence that Spencer was denied adequate process or prevented from utilizing the available process, where he was informed of the appeals process to the Board of Health and made no attempt to appeal.  *See Ford v. Bender*, 768 F.3d 15, 24 (1st Cir. 2014) ("The heartland of the right to procedural due process, as the name implies, is a 'guarantee of fair procedure.'  This right assures individuals who are threatened with the deprivation of a significant liberty or property interest by the state notice and an opportunity to be heard '"at a meaningful time and in a meaningful manner."'" (citations omitted)); *see also Quint*, 172 F.3d at 20 ("[S]tatements by counsel are not competent evidence.").  Furthermore, Spencer is plainly incorrect that he needed to go through Bracey to appeal to the Board of Health, *see* Dkt. 30-1¶ 103 (citing North Reading's Local Regulations, Chapter 1 of "Administrative Procedures" Section 1.2.004 Appeal of Administrative Decisions); *see also Chapter 3 Local Regulations*, North Reading, at *7 https://www.northreadingma.gov/sites/g/files/vyhlif3591/f/uploads/chapter_3_local_regulations_title_v.pdf (last visited Jan. 20, 2026), and Spencer fails to identify any record evidence to demonstrate that he was denied access to the Board of Health to make an appeal.

those claims would be futile as the MCRA requires that a person's rights were interfered with by 'threats, intimidation or coercion,' to state a claim." *Drago*, 2023 WL 5725169, at *2 (quoting Mass. Gen. Laws c. 12, § 11H). The Court has not identified evidence in the record that Newhouse used "threats, intimidation or coercion" to interfere with Spencer's rights, nor has Spencer identified any such evidence. Thus, Newhouse is entitled to summary judgment on Spencer's state law claims.

### 2.    <u>Federal Claims</u>

#### a.    <u>First Amendment Retaliation</u>

Spencer has alleged that Newhouse retaliated against him for exercising his First Amendment rights. "To hold [Newhouse] liable for unconstitutional retaliation, [Spencer] must show that '[his] conduct was constitutionally protected" and that "this conduct was a substantial factor or a motivating factor driving the allegedly retaliatory decision." *Maloy v. Ballori-Lage*, 744 F.3d 250, 252 (1st Cir. 2014) (quoting *Air Sunshine, Inc. v. Carl,* 663 F.3d 27, 35–36 (1st Cir. 2011)). The parties do not dispute at this stage that Spencer's conduct was constitutionally protected activity. *See* Newhouse Mem. at 7–8 (arguing only motivation).

Spencer does not dispute that Newhouse only learned about his protected activity (the complaints he made to the Middlesex District Attorney's Office in 2019) *after* she had revoked his installer's license in Wilmington. Newhouse CMF ¶ 14. Though Spencer describes Newhouse's affidavit as "self-serving," Newhouse Opp. at 6, the Federal Rules of Civil Procedure explicitly permit parties to seek summary judgment supported by affidavits, Fed. R. Civ. P. 56(c)(1)(A) (describing affidavits as an example of materials in the record to support summary judgment assertions of fact). Nor does the fact that a statement is "self-serving" render it disputed. *See Nunes v. Mass. Dep't of Corr.*, 766 F.3d 136, 142 (1st Cir. 2014) ("Generally speaking, a party cannot raise a genuine dispute merely 'by relying on the hope that the jury will not trust the

credibility of the witness,' but must instead present 'some affirmative evidence' on the point, except perhaps where the testimony is 'inherently unbelievable.'" (quoting *McGrath v. Tavares*, 757 F.3d 20, 28 n.13 (1st Cir. 2014))).  Thus, Spencer's complaints cannot have been a factor at all in Newhouse's decision to revoke Spencer's installer's license.[30]  *See Gonzalez-Droz v. Gonzalez-Colon*, 660 F.3d 1, 16 (1st Cir. 2011) (holding that a suspension of a license which occurred before plaintiff made his complaint "cannot plausibly be viewed as an act of retaliation").

That said, Spencer has identified a genuine dispute regarding the basis for why Newhouse refused to renew his installer's license.  While Newhouse argues it would not have made sense to renew his installer's license in December 2021, given that he would have needed to reapply shortly thereafter, Newhouse Mem. at 7–8, Spencer has presented evidence that her refusal to renew his license was related to his protected conduct, *see* Newhouse CMF at 7 ¶ 25.  The jury will have to determine whose version is correct. *See, e.g.*, *Rodriguez–Rios v. Cordero*, 138 F.3d 22, 25 (1st Cir. 1998) (explaining that generally, motivation is a question of fact for the jury).

### b.  Equal Protection

Spencer has also alleged an equal protection violation, based on his claim that Newhouse treated him differently than other installers.  To establish an equal protection claim, Spencer must show that "(1) [he], compared with others similarly situated, was selectively restricted; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent

---

[30] To the extent Spencer seeks to impute the retaliatory animus he alleges Bracey acted under in reporting Spencer to Newhouse, Spencer neither clearly makes this point nor provides any authority to support this contention. "It is the duty of an attorney to research the law and to present the court with citations to controlling legal authority." *Vargas v. McNamara*, 608 F.2d 15, 19 (1st Cir. 1979); *see also Rodriguez*, 659 F.3d at 175 ("Judges are not mind-readers, so parties must spell out their issues clearly, highlighting the relevant facts and analyzing on-point authority.").  Failure to support the argument constitutes a waiver.  *Rodriguez-Reyes*, 711 F.3d at 58 (citing *Zannino*, 895 F.2d at 17) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").  Nor does the Court see any obvious basis on which such animus could be imputed to Newhouse.

to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Davis v. Coakley*, 802 F.3d 128, 132–33 (1st Cir. 2012) (quoting *Rubinovitz v. Rogato*, 60 F.3d 906, 910 (1st Cir. 1995)).

On this first element, Spencer's claim fails. There is simply no evidence in the record that Newhouse treated Spencer differently when revoking his installer's license. Though Spencer purports to dispute Newhouse's evidence that she had no knowledge that any others were operating heavy machinery without an HEL, Newhouse CMF at 4 ¶¶ 28, 30, Spencer's affidavit does not create a genuine dispute of fact. Spencer merely states that he informed Newhouse of five other people who lacked an HEL. Dkt. 40 ¶¶ 33–34. His interrogatory response further states that there was "a heavy equipment operator (Tom Macpherson) that Shelly Newhouse dealt with on a daily/weekly basis, who does not possess a hoisting license. She knows this and did nothing to him, knowing full well he operates heavy machinery daily." Dkt. 29-4 at 7 (Spencer's response to Interrogatory No. 13). Neither of these creates a genuine dispute.

First, Spencer's affidavit does not demonstrate that those unnamed people were also impermissibly operating heavy machinery, which is the basis upon which Newhouse revoked Spencer's installer's license.[31] Spencer merely claims that they lacked an HEL, not that any of these people who supposedly lacked an HEL were also operating heavy machinery. Second, the interrogatory response does not actually provide any credible evidence that Newhouse knew Macpherson, knew that he lacked an HEL, or knew that he operated heavy machinery despite lacking an HEL. *See SMS Sys. Maint. Servs., Inc. v. Digital Equip. Corp.*, 188 F.3d 11, 24 (1st Cir. 1999) (explaining that courts need not credit at summary judgment conclusory, self-serving

---

[31] Spencer does not state in his affidavit that any of these people who supposedly lack this license were also operating heavy machinery.

speculation in affidavits); *see also United States v. $8,440,190.00 in U.S. Currency*, 719 F.3d 49, 58–59 (1st Cir. 2013) ("Even crediting the conclusory, self-serving statements made in the affidavit, the mere existence of a scintilla of evidence in favor of the nonmoving party is insufficient to defeat summary judgment." (citations and internal quotation marks omitted)). Spencer cannot speak to Newhouse's knowledge, and his mere speculation that she knew, without more—especially where she has expressly denied such knowledge—is insufficient. Thus, Spencer has failed to identify a genuine dispute of fact that he was treated differently.

Additionally, Spencer argues that he will be able to show that Newhouse does know Macpherson and that she knows Macpherson lacks an HEL. Newhouse Opp. at 7. But Spencer cannot create a dispute of fact by merely claiming he will have evidence by trial that creates a dispute. A nonmovant at summary judgment must produce more than a vague reference to "credible evidence" that will be shown at trial. *See* Fed. R. Civ. P. 56(c)(1)(A) (requiring that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record"); *see also Quint*, 172 F.3d at 20 ("[S]tatements by counsel are not competent evidence."). Without identifying specific factual support that creates a dispute of fact, Spencer fails to meet his burden to oppose summary judgment. *See Rodriguez v. Hosp. San Cristobal, Inc.*, 91 F.4th 59, 69 (1st Cir. 2024) ("To defeat a motion for summary judgment, the nonmoving party must demonstrate the existence of a trialworthy issue as to some material fact. . . To make this showing, a plaintiff must affirmatively point to specific facts that demonstrate the existence of an authentic dispute." (citations and internal quotation marks omitted)). Thus, Newhouse is entitled to summary judgment on Spencer's equal protection claims.

### c.   <u>Due Process</u>

The parties are ships passing in the night on Spencer's due process claim. Newhouse contends that she is entitled to summary judgment for what she describes as a procedural due

process claim, pointing to Spencer's interrogatory responses.[32]  Newhouse Mem. at 10–14.
Spencer does not defend a procedural due process claim, instead arguing that "the claim is actually
more in line with a substantive due process violation."  Newhouse Opp. at 8.  The Court reads the
complaint as alleging both a procedural and substantive due process violation.  *See* Compl. ¶ 44
(alleging the due process violation stems from both retaliation and lack of meaningful procedures).

To the extent the complaint alleges a procedural due process violation, Newhouse is
entitled to summary judgment for substantially the reasons stated in her brief.  *See* Newhouse
Mem. at 10–14.

With regards to Spencer's contention that he has raised a substantive due process claim for
which there are disputes of material fact, this claim fails.  As an initial matter, Spencer's only case
in support of his substantive due process argument concerns First Amendment retaliation, not due
process.  *See generally Maloy*, 744 F.3d 250 (1st Cir. 2014).  But more importantly, a substantive
due process claim requires demonstrating that the government action "shocks the conscience."
*Maldonado-Gonzalez v. P.R. Aqueduct & Sewer Auth.*, 158 F.4th 27, 35 (1st Cir. 2025) ("If
executive conduct does not shock the conscience, the plaintiff has failed to state a constitutional
violation and the inquiry ends.").  To shock the conscience, the conduct "must at the very least be
extreme and egregious, or, put another way, truly outrageous, uncivilized, and intolerable."  *Pagan
v. Calderon*, 448 F.3d 16, 32 (1st Cir. 2006).  "The burden to show such conduct 'is extremely

---

[32] Spencer's interrogatory response regarding the basis of his due process claim stated:

> Mrs. Shelly Newhouse personally came to my job site located at 164 Burlington Ave. on
> her day off and revoked my license without warning.  She failed to inform me that I was
> able to appeal or had any other administrative recourse.  I contacted the Town Manager's
> Office and spoke to Kerri Colburne-Dione, Assistant Town Manager, she said that Shelly
> Newhouse was completely in the right, we were in the wrong and there was nothing we
> could do.

Dkt. 29-4 at 8 (Spencer's response to Interrogatory No. 15).

high, requiring stunning evidence of arbitrariness and caprice that extends beyond mere violations of state law, even violations resulting from bad faith to something more egregious and more extreme.'" *Hewes v. Pangburn*, 2025 WL 3677352, at *9 (1st Cir. Dec. 18, 2025) (quoting *J.R. v. Gloria*, 593 F.3d 73, 80 (1st Cir. 2010)).

> A hallmark of successful challenges is an extreme lack of proportionality, as the test is primarily concerned with "violations of personal rights . . . so severe . . . so disproportionate to the need presented, and . . . so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience."

*Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 881 (1st Cir. 2010) (quoting *Moran v. Clarke*, 296 F.3d 638, 647 (8th Cir. 2002) (en banc)).

None of those "hallmarks" are present here. Having concluded there is no genuine dispute that Newhouse only learned about Spencer's protected activity (the complaints he made to the Middlesex District Attorney's Office in 2019) *after* she had revoked his installer's license, Newhouse CMF at 3 ¶ 14; *see also supra* Section III(B)(2)(a), Newhouse's reliance on Bracey's report when she revoked Spencer's installer's license—where there is no genuine dispute that she believed the report credible—simply cannot meet the standard of shocking the conscious under First Circuit precedent. *See Maldonado-Gonzalez*, 158 F.4th at 35–36.

## IV.    <u>Conclusion</u>

For the foregoing reasons, Defendant Robert Bracey's motion for summary judgment, Dkt. 30, and Defendant Shelly Newhouse's motion for summary judgment, Dkt. 27, are both GRANTED in part.

**So Ordered.**

/s/ Brian E. Murphy

Brian E. Murphy

Dated:  January 30, 2026                    Judge, United States District Court